UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| AMERICAN INSTITUTE OF PHYSICS, WILEY PERIODICALS, INC., and JOHN WILEY & SONS, INC., | ) ) ) ) ) | No.: 12-CV-528 (RHK-JJK) |
| Plaintiffs, | ) ) | **SCHWEGMAN'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |
| vs. | ) ) | |
| SCHWEGMAN LUNDBERG & WOESSNER, P.A. and JOHN DOES NOS. 1-10, | ) ) ) ) | |
| Defendants. | ) | |

Plaintiffs' motion to compel fails to accurately characterize or address Schwegman's objections to Plaintiffs' discovery. Rather, Plaintiffs lump complaints about responses to two interrogatories and twelve document requests into three broad categories. Plaintiffs' brief addresses only some of the discovery responses in dispute. None of Schwegman's responses are quoted in their entirety, though all of them (whether disputed or not) are attached to the Pramas Declaration.

Plaintiffs' broad brush attack is inconsistent with the requirements of Local Rule 37.1, ignores information that Schwegman has provided, and gives short shrift to Schwegman's actual objections, which provide a detailed explanation of why the discovery sought is, in whole or in part, improper. Plaintiffs' motion should be denied. The discovery requests and responses at issue are quoted below, and are followed by a concise recitation of why the discovery sought is improper.

1

In support of this memorandum, Schwegman submits the Declaration of Peter Rebuffoni ("Rebuffoni Decl.") filed herewith. All exhibits are attached to the supporting Declaration of Devan V. Padmanabhan, also filed herewith.

The Rebuffoni Declaration provides information on the number of attorneys, patent agents and other staff in the Schwegman firm from 2005 to 2012, and should resolve any issue regarding Document Request No. 26. See Pl. Br. at 10-11.

I.  **Interrogatories 1 & 2 Regarding "The Circumstances In Which Schwegman Made A Copy Of The" Greenwald And McDonald Articles[1]**

   A.  **The Discovery Requests & Responses**

   **Interrogatory No. 1:** For each Copy of the Greenwald Article that Schwegman ever had in its possession, custody or control, Describe in detail the circumstances in which Schwegman made a Copy of that article.

   **Answer to Interrogatory No. 1:** Defendant objects to the request as overly broad and unduly burdensome. In seeking information regarding every copy the Schwegman firm "ever had in its possession," the Interrogatory purports to require more than a reasonable search or reasonable investigation. As described in more detail below, one instance of the Greenwald Article and one instance of the McDonald Article reside in the Schwegman firm's document management system. The Schwegman firm can determine when these articles were cited to the Patent Office, and that information is provided below. The Schwegman firm, however, does not track, and has no way of knowing, whether or when the single instance of each article resident on its file management system, was printed, downloaded or accessed. Subject to and without waiving these or its general objections, Defendant states as follows.

   In 2009, a client transferred a number of patent application files from another law firm to the Schwegman firm. In 2007, prior counsel

---

[1] The quotation is from Plaintiffs' interrogatory. As noted in its General Objection 2, Schwegman objects to the term "Copy," and in responding to the discovery does not admit that any copies were made.

had cited both the Greenwald and McDonald Articles during the prosecution of these patent applications.

The paper files transferred to the Schwegman firm did not contain copies of the cited references. After it became counsel of record, the Schwegman firm accessed the Patent Office's Private PAIR online filing system. Cited references are available on Private PAIR. The Schwegman firm downloaded the Greenwald Article once and the McDonald Article once from Private PAIR

The Schwegman firm operates a paperless file management system. Once the cited references were obtained from the Patent Office's Private PAIR system, a single electronic instance of each reference was placed on Schwegman firm's file management system. A link to each cited reference is placed in the electronic file for the patent applications that cite that reference.

One of the files transferred into the Schwegman firm in 2009 was a continuation application. Prior counsel had filed the application, but had not filed an Information Disclosure Statement or IDS. In connection with that patent application, the Schwegman firm filed an IDS citing the Greenwald and McDonald Articles.

The Schwegman firm also filed seven additional patent applications which were continuations, continuations-in-part, or divisionals of the applications that were transferred into the Schwegman firm in 2009. The Schwegman firm cited the Greenwald and McDonald Articles in each of these seven applications, through Information Disclosure Statements.

The Schwegman firm has filed Information Disclosure Statements citing the Greenwald and McDonald Articles in eight patent applications. In four of these applications the Greenwald and McDonald Articles were also submitted to the Patent Office electronically as a pdf files. The single instance of the Greenwald Article and McDonald Article residing in the Schwegman firm's file management system was used to generate the pdf file that was submitted to the Patent Office. In the other four applications, the Schwegman firm listed the Greenwald and McDonald Articles on the IDS, but did not provide the articles to the Patent Office.

When the Schwegman firm cites a reference during prosecution of a patent application, the electronic file for that patent application is updated to include an indication that the reference was cited, and a link

to the single instance of that reference on the Schwegman firm's file management system.

The Schwegman firm provided its client a copy of the Information Disclosure Statements that were filed but did not provide the cited references.

**Interrogatory No. 2:** For each Copy of the McDonald Article that Schwegman ever had in its possession, custody or control, Describe in detail the circumstances in which Schwegman made a Copy of that article.

**Answer to Interrogatory No. 2:** The response to Interrogatory No. 1, above, addresses both the Greenwald and McDonald Articles. The response to Interrogatory No. 1, together with the general and specific objections stated above, is incorporated herein by reference.

B.     Argument

Schwegman's response provides the information reasonably available to it regarding the manner in which Schwegman first obtained the Greenwald and McDonald Articles. The information provided is detailed and precise. The articles were downloaded from the Patent Office's Private PAIR system. At Plaintiffs' request, Schwegman is investigating whether the Greenwald and McDonald Articles were downloaded directly to the Schwegman document management system or whether they were downloaded to a hard drive before being placed on the document management system; Schwegman will provide further information if it is available.

The Schwegman firm has also identified instances where it provided the Greenwald and McDonald Articles to the Patent Office. (At the time the discovery was served, Plaintiffs contended that providing articles to the Patent Office was an act of infringement, a position Plaintiffs have since recanted.) In addition, the Schwegman firm

4

has identified instances in which it has cited the Greenwald and McDonald Articles to the Patent Office without providing the articles themselves to the Patent Office.

With respect to internal copies or file copies, Schwegman has explained that it operates a paperless system. Rather than keep a paper file for each patent application – containing all communications with the Patent Office and all relevant art – the Schwegman firm operates on electronic or virtual files. A single instance of the Greenwald and McDonald articles resides on the Schwegman document management system. When the Schwegman firm cited these articles to the Patent Office, in the course of handling a patent application, the electronic filed for that application was updated to include a link to those articles and an indication that they were cited to the Patent Office.

The additional information that Plaintiffs seek is not reasonably available. The Schwegman firm does not track and has no way of knowing, whether, when or how the single instance of the Greenwald and McDonald Articles resident on its file management system was printed, downloaded or accessed. In fact, apart from the information provided above, the systems in place at the Schwegman firm do not track whether, when, how many times, or by what individuals, articles on the document management system are printed, downloaded or accessed.

The additional work that Plaintiffs seek to impose on Schwegman is not reasonable or feasible, would not significantly advance the case, and the burdens of such work would outweigh any likely benefits. First, Plaintiffs complain that Schwegman should be required to poll each of its staff to ask whether they looked at, printed, accessed or downloaded (all acts that Plaintiffs claim result in infringement) either of the two

5

articles at some point since the files were transferred into the firm three years ago. This would be impractical, unduly burdensome and of no value to the case. It seems unlikely that a patent attorney with a substantial work load, who reviews many technical documents in the course of a week would remember looking at, accessing, etc., either the Greenwald or McDonald Articles. Since 2009, Schwegman has employed more than 160 attorneys, patent agents and other staff. While Schwegman has three main offices in Minneapolis, San Jose, California and Austin, Texas, Schwegman also has a significant portion of its staff in more than a dozen satellite offices around the country, including satellite offices in Arizona, Connecticut, Colorado, Indiana, Iowa, Maryland, New Hampshire, New York, Ohio, Texas, Tennessee, Utah, Washington, DC, and Wisconsin. Rebuffoni Decl. ¶¶4-7. Polling each of its staff in these locations would be fruitless, unnecessary and unreasonable.

Second, Plaintiffs complain that Schwegman should be required to search the hard drives and other electronic files of its staff for the Greenwald and McDonald Articles. This demand of Plaintiffs is even more far-fetched than the demand that Schwegman individually poll each staff member. Schwegman IT staff are not aware of any way in which the search could be accomplished through automated systems, nor have Plaintiffs suggested any. Moreover, while Plaintiffs refer to "the amount at stake," Plaintiffs' own discovery responses explain that each Article could have been purchased for $25.00 to $35.00 apiece. See Exhibit 1 (Plaintiffs' Response to Interrogatory 8).

Finally, Plaintiffs are simply wrong when they claim that extensive manual and electronic canvassing are necessary to detect multiple copies of the Greenwald and

McDonald Article and thereby maximize statutory damages.  A single infringer of a single work is liable for a single amount no matter how many acts of infringement are involved and whether the acts were separate, isolated or occurred in a related series. Walt Disney Co. v Powell, 897 F.2d 565, 569 (D.C. Cir. 1990).  Accordingly, the discovery Plaintiffs seek is irrelevant to statutory damages, and not warranted by any actual damage which is conceded to be less than $40 per alleged infringement.

Plaintiffs' motion to compel further responses should be denied.

**II.    Document Requests 5 & 10 Regarding "The Circumstances Under Which Schwegman Obtained Its First Copy" Of The Greenwald & McDonald Articles**

   **A.    The Discovery Requests & Responses**

   **Document Request No. 5:** Documents sufficient to identify the circumstances under which Schwegman obtained its first Copy of the Greenwald Article.

   **RESPONSE:** Schwegman objects to the request as vague.  Subject to and without waiving this and its General Objections, Schwegman will produce information regarding the properties of the instance of the Greenwald article that resides on Schwegman's document management system, including for example the creation date or the date the document was obtained from the Patent Office's Private PAIR system.

   **Document Request No. 10**: Documents sufficient to identify the circumstances under which Schwegman obtained its first copy of the McDonald Article.

   **RESPONSE:** Schwegman objects to the request as vague.  Subject to and without waiving this and its General Objections, Schwegman will produce information regarding the properties of the instance of the McDonald article that resides on Schwegman's document management system, including for example the creation date or the date the document was obtained from the Patent Office's Private PAIR system.

**B.     Argument**

Plaintiffs' complaint here is hard to fathom given Schwegman's detailed responses to Interrogatories 1 and 2, which explain precisely how Schwegman first obtained the Greenwald and McDonald articles.  The only documents that Schwegman has that would be responsive are the "properties" information regarding the single instance of each article on its document management system, and Schwegman has produced these.

Plaintiffs' motion never even attempts to explain any perceived deficiency in this response.  Document Requests 5 and 10 are quoted at page 4 of Plaintiffs' brief, and a portion of Schwegman's response is quoted on page 5.  But Plaintiffs' never actually explain why those responses are deficient.  Plaintiffs' argument about searching hard drives is irrelevant to Document Requests 5 and 10 because those requests specifically target the *first* instance in which Schwegman obtained the Greenwald and McDonald Articles.  As explained, in response to Interrogatories 1 and 2, the first time Schwegman obtained the Greenwald and McDonald Articles was when they were downloaded from the Patent Office's Private PAIR system and placed in the Schwegman document management system. Thus, the only responsive and relevant documents are those pertaining to the properties of the single instance of each article that exists on the document management system.

Plaintiffs' motion to compel further responses should be denied.

### III. Document Requests 7 & 12 Regarding "Each Copy of the Greenwald [And McDonald] Article[s] That Schwegman Made Prior to August 22, 2011"

#### A. The Discovery Requests & Responses

**Document Request No**. 7: Documents sufficient to identify each Copy of the Greenwald Article that Schwegman made prior to August 22, 2011.

**RESPONSE:** Schwegman objects to the request as vague, assuming that such copies were made, and, depending on how the request is interpreted, as overly broad and unduly burdensome. Schwegman objects to request to the extent it seeks information for a time period beyond the statute of limitations. Subject to and without waiving these and its General Objections, Schwegman will produce the Information Disclosure Statements it has filed with the Patent Office citing the Greenwald Article.

**Document Request No. 12:** Documents sufficient to identify each Copy of the McDonald Article that Schwegman made prior to August 22, 2011.

**RESPONSE:** Schwegman objects to the request as vague, and assuming that such copies were created, and, depending on how the request is interpreted, as overly broad and unduly burdensome. Schwegman objects to request to the extent it seeks information for a time period beyond the statute of limitations. Subject to and without waiving these and its General Objections, Schwegman will produce the Information Disclosure Statements it has filed with the Patent Office, citing the McDonald Article.

#### B. Argument

Document Requests 7 and 12 are unreasonable and unduly burdensome for the same reasons discussed above with regard to Interrogatories 1 and 2. Schwegman has provided a detailed interrogatory response and documents reasonably available to it regarding the provenance of the single instance of the Greenwald Article and McDonald Article on its document management system, and regarding the citation of those Articles to the Patent Office. Manually canvassing Schwegman staff to find out if they looked at,

9

printed, accessed or downloaded the Greenwald and McDonald Articles is unreasonable. Schwegman is not aware of any method to accomplish electronic searching, nor have Plaintiffs suggested any. Moreover, as noted above, the information sought is irrelevant to statutory damages and actual damages are de minimis.

Plaintiffs' motion to compel further responses should be denied.

### IV. Document Request 37 Regarding Schwegman's "Usual Practices" For Obtaining Articles

#### A. The Discovery Request & Response

**Document Request No. 37:** Documents sufficient to demonstrate the usual practices of Schwegman to obtain Copies of non-patent literature that Schwegman wanted or needed in connection with its patent prosecution practice.

**RESPONSE:** Schwegman objects to the request as seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. At the Pretrial Scheduling Conference on July 12, 2012, Defendants' counsel expressed the concern that Plaintiffs would attempt to expand the number of works at issue in this case beyond all reason, thereby creating undue discovery burdens and making the proposed case schedule unworkable. In particular, Defendants' counsel pointed out that the last time he represented a copyright defendant in a case brought by Mr. Dunnegan in the Southern District of New York, Mr. Dunnegan alleged infringement of about 17,000 works. The sheer volume of allegedly infringed works created significant problems, as each alleged infringement is effectively a case unto itself, and resulted the parties spending two years conducting discovery. In response, Mr. Dunnegan, represented to Magistrate Judge Keyes and defense counsel that he would not take a similar approach in this case. Rather, Mr. Dunnegan represented that the Complaint would be amended to amend in a small number of additional copyrights which would be the focus of the case. This request is inconsistent with that representation. The request is not limited to the two articles identified in the Complaint or to the small number of additional articles that Plaintiffs were to amend into the Complaint. Nevertheless, Schwegman has provided a detailed interrogatory answer explaining the provenance of the single instance of

10

the Greenwald and McDonald articles that reside on Schwegman's document management system. Should Plaintiffs' amend the complaint to allege infringement of a small number of additional works, Schwegman reserves the right to similarly address the provenance such articles, if any, that are on its system. Given the specific and detailed answer regarding the provenance of the two specific piece of non-patent literature identified in the Complaint, generic "usual practices . . . to obtain copies of non-patent literature" are not relevant or reasonably calculated to lead to the discovery of admissible evidence.

### B. Argument

As made clear to Plaintiffs' counsel in the meet-and-confer process, Schwegman does not have a document that reflects its "usual practices" for getting non-patent literature. What other "sufficient" documents Plaintiffs seek is unclear and Schwegman cannot identify any. For these reasons alone Plaintiffs' motion should be denied. As also made clear to Plaintiffs' counsel in the meet-and-confer process, however, the proper approach would be to take some depositions, perhaps including a deposition of Schwegman staff who perform library functions, and ask them some questions.

Plaintiffs' argue that "in some cases" defendants rely upon such "usual practices" evidence, and that they expect Schwegman to do so in this case. Pl. Br. at 8. At this point, however, because the origin of the two articles identified in the Complaint is clear, there is no need for Schwegman to rely on such evidence. The origin of the two Articles identified in the Complaint has been set forth in detail in Schwegman's response to Interrogatories 1 and 2. Schwegman reserves the right to provide similar information regarding the additional works identified in the Amended Complaint. If the provenance of some works cannot be determined, then "usual practices" may become relevant; at this

11

point, however, they are not. Nevertheless, Plaintiffs are welcome to inquire on this issue at depositions.

Plaintiffs' motion to compel further responses should be denied.

V.  **Document Requests 39, 40 & 41 Regarding Schwegman's Subscriptions To AIP, Wiley Or Other Scientific/Medical/Technical Journals**

   A.  **The Discovery Requests & Responses**

   **Document Request No. 39:** Documents sufficient to identify the journals of Wiley to which Schwegman has subscribed since January 1, 2007.

   **Document Request No. 40:** Documents sufficient to identify the journals of AIP to which Schwegman has subscribed since January 1, 2007.

   **RESPONSE:** Schwegman objects to the request as seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. At the Pretrial Scheduling Conference on July 12, 2012, Defendants' counsel expressed the concern that Plaintiffs would attempt to expand the number of works at issue in this case beyond all reason, thereby creating undue discovery burdens and making the proposed case schedule unworkable. In particular, Defendants' counsel pointed out that the last time he represented a copyright defendant in a case brought by Mr. Dunnegan in the Southern District of New York, Mr. Dunnegan alleged infringement of about 17,000 works. The sheer volume of allegedly infringed works created significant problems, as each alleged infringement is effectively a case unto itself, and resulted the parties spending two years conducting discovery. In response, Mr. Dunnegan, represented to Magistrate Judge Keyes and defense counsel that he would not take a similar approach in this case. Rather, Mr. Dunnegan represented that the Complaint would be amended to amend in a small number of additional copyrights which would be the focus of the case. This request is inconsistent with that representation. The request is not limited to the two journals in which the two articles identified in the Complaint appeared. Nor is the request limited to the small number of additional articles that Plaintiffs were to amend into the Complaint, or the journals in which those articles appeared. Even if the request were so limited it would still not seek information that is relevant or

12

reasonably calculated to lead to the discovery of admissible evidence. Schwegman objects to request to the extent it seeks information for a time period beyond the statute of limitations.

**Document Request No. 41:** Documents sufficient to identify each scientific, technology or medical journal to which Schwegman has subscribed since January 1, 2007.

**RESPONSE:** Schwegman objects to the request as seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. At the Pretrial Scheduling Conference on July 12, 2012, Defendants' counsel expressed the concern that Plaintiffs would attempt to expand the number of works at issue in this case beyond all reason, thereby creating undue discovery burdens and making the proposed case schedule unworkable. In particular, Defendants' counsel pointed out that the last time he represented a copyright defendant in a case brought by Mr. Dunnegan in the Southern District of New York, Mr. Dunnegan alleged infringement of about 17,000 works. The sheer volume of allegedly infringed works created significant problems, as each alleged infringement is effectively a case unto itself, and resulted the parties spending two years conducting discovery. In response, Mr. Dunnegan, represented to Magistrate Judge Keyes and defense counsel that he would not take a similar approach in this case. Rather, Mr. Dunnegan represented that the Complaint would be amended to amend in a small number of additional copyrights which would be the focus of the case. This request is inconsistent with that representation. The request is not limited to the two journals in which the two articles identified in the Complaint appeared. Nor is the request limited to the small number of additional articles that Plaintiffs were to amend into the Complaint, or the journals in which those articles appeared. Even if the request were so limited it would still not appear to seek information that is relevant or reasonably calculated to lead to the discovery of admissible evidence. Schwegman objects to request to the extent it seeks information for a time period beyond the statute of limitations.

**B.     Argument**

Document Requests 39, 40 and 41 are not really intended for discover facts pertaining to the case, they are, instead, intended for Plaintiffs' counsel to "discover" potential new clients. Requests are 39 and 40 are directed to Schwegman's subscriptions

to American Institute of Physics and Wiley journals. These requests are just cover for Request 41, which is directed to third party scientific, medical or technical journals. Certainly, the American Institute of Physics and Wiley already know, or can readily determine, the subscribers to their journals. It is Schwegman's other subscriptions that are of interest to Plaintiffs' counsel, because he can then recruit those publishers to sue Schwegman, making baseless claims of copying.

The existence or absence of the subscriptions that these requests target would not be probative of any relevant fact.[2] Even if one assumes that Schwegman had a license to a journal owned by some entity other than Plaintiffs, which published articles other than the Greenwald and McDonald Articles, one is left without any way to connect that "fact" up to any issue in this case. Further, even if one assumes that Schwegman had a subscription to Applied Physics Letters and the Journal of the Polymer Society (the journals in which the Greenwald and McDonald Articles appeared), there is no nexus between those "facts" and any issue in the case. Surely, Plaintiffs do not intend to suggest that such subscriptions would authorize the rampant "internal copying" of the Greenwald and McDonald Articles that Plaintiffs (incorrectly and without any factual basis) hypothesize.

Plaintiffs' motion to compel further responses should be denied.

---

[2]    Plaintiffs' motion quotes these requests, obliquely refers to Schwegman's responses, but does not undertake any actual explanation of why that response is improper. Plaintiffs' merely state that "[t]hese objections are not well taken." Pl. Br. at 8.

## VI. Document Requests 42 and 43 Regarding Each Wiley or AIP Article For Which Schwegman Has Purchased A License

### A. The Discovery Requests & Responses

**Interrogatory No. 42:** Documents sufficient to identify each Wiley article for which Schwegman has purchased a license or a licensed Copy since January 1, 2007.

**Interrogatory No. 43:** Documents sufficient to identify each AIP article for which Schwegman has purchased a license or a licensed Copy since January 1, 2007.

**RESPONSE:** Schwegman objects to the request as seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. At the Pretrial Scheduling Conference on July 12, 2012, Defendants' counsel expressed the concern that Plaintiffs would attempt to expand the number of works at issue in this case beyond all reason, thereby creating undue discovery burdens and making the proposed case schedule unworkable. In particular, Defendants' counsel pointed out that the last time he represented a copyright defendant in a case brought by Mr. Dunnegan in the Southern District of New York, Mr. Dunnegan alleged infringement of about 17,000 works. The sheer volume of allegedly infringed works created significant problems, as each alleged infringement is effectively a case unto itself, and resulted the parties spending two years conducting discovery. In response, Mr. Dunnegan, represented to Magistrate Judge Keyes and defense counsel that he would not take a similar approach in this case. Rather, Mr. Dunnegan represented that the Complaint would be amended to amend in a small number of additional copyrights which would be the focus of the case. This request is inconsistent with that representation. The request is not limited to the two articles identified in the Complaint. Nor is the request limited to the small number of additional articles that Plaintiffs were to amend into the Complaint. Instead, this request threatens to create the discovery morass that plaintiffs' represented to the Court and defense counsel that he would avoid, by limiting the case to a small number of allegedly infringed works. Schwegman objects to request to the extent it seeks information for a time period beyond the statute of limitations.

### B. Argument

Document Requests 42 and 43 are over broad because they are not limited to the works identified in the Complaint or Amended Complaint. Moreover Schwegman has no

15

records from which it can determine every Wiley or AIP articles it may have licensed. Presumably, those records would be more accessible to AIP and Wiley than to Schwegman, assuming that AIP and Wiley know who licenses their articles.

Plaintiffs' motion to compel further responses should be denied.

**VII. Document Request 19 Regarding Invoices Pertaining To Prosecution Of The '091 Patent**

    **A.    Discovery Request & Response**

**Document Request No. 19:** All invoices Schwegman sent to any Person for Schwegman's fees and disbursements for the prosecution of the patent application that matured into the '091 Patent.

**RESPONSE:** Schwegman objects to this request on the grounds that it seeks information that is subject to the attorney-client privilege and/or attorney work product doctrine, and which is not relevant to any claim or defense and not reasonably calculated to lead to the discovery of admissible evidence. Schwegman's revenue from prosecution of the '091 patent application bears no connection to the alleged infringement of the Greenwald and McDonald Articles. The Greenwald and McDonald were two of approximately 316 references cited during prosecution of the '091 patent. Schwegman's revenue is not attributable to the allegedly infringing citation of the Greenwald and McDonald Articles. The discovery sought is improper, unreasonable and unnecessary.

    **B.    Argument**

Plaintiffs assert that this request is designed to determine "the amount of money that Schwegman made from the use of the infringing copy." Pl. Br. at 9. The implicit assumption that the Greenwald and McDonald Articles were somehow the central focus of the '091 patent prosecution is wrong. The Greenwald and McDonald Articles, were two of more than 300 pieces of art cited during prosecution of the '091 Patent. Exhibit 2 ("the '091 Patent"). The cover page of the '091 Patent lists some of the cited art. The

16

cover page is followed by four more pages of two column small print, identifying all the other cited references.  Although the Greenwald and McDonald Articles were cited during prosecution of the '091 Patent, they were never addressed in an Office Action or a Response to an Office Action.  In other words, during the entire dialogue between the Schwegman firm and the Patent Office during prosecution of the '091 patent, there was no substantive discussion of either the Greenwald or the McDonald Article.

Equally wrong is the unsupported assertion that Schwegman somehow generated revenue from the alleged infringement.  It is important to be clear about the acts that are alleged to infringe.  Plaintiffs have withdrawn from the case any claim that Schwegman infringed by: (i) making copies for transmission to the Patent Office; (ii) transmitting copies to the Patent Office; or (iii) making one archival copy of what was transmitted to the Patent Office.  Am. Compl. ¶1.  Accordingly, Schwegman's provision of the articles to the Patent Office is not alleged to infringe.  If any revenue was generated by the submission of those two articles to the Patent Office, it is not attributable to any infringement.

Plaintiffs have not – and cannot – put forward any plausible nexus between Schwegman's revenue from prosecuting the '091 patent application and the alleged infringement. The alleged infringement is limited to supposed internal copying.  Plaintiffs have not come forward with any nexus between law firm revenue and the alleged internal copying.  Plaintiffs do not explain how an alleged "internal copy" – such as an article being emailed from one attorney to another – generated any revenue to the firm.

"Although there is a broader standard for relevance in discovery than in the context of admissibility, some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." <u>Taiyo Int'l v. Phyto Tech. Corp.</u>, 275 F.R.D. 497, 500 (D. Minn. 2011) (internal citation and quotation omitted). In this case, Plaintiffs have made no such showing.

Plaintiffs' failure to make any threshold showing of relevance would be devastating in any case, but is particularly so here, where the law requires a causal nexus between the alleged infringement and the defendant's revenues. In a case like this one, in which the allegedly infringing materials are not themselves being sold, before a plaintiff can engage in discovery as to a defendant's profits, the plaintiff must first carry the burden of showing a nexus between the alleged infringement and the defendant's revenues. <u>Fleurimond v. New York University</u>, 2011 WL 3273876, *5 (E.D.N.Y. July 29, 2011) (denying motion to compel discovery regarding defendant's revenues in the absence of any causal link between alleged infringement and revenues). Mere inclusion of the allegedly infringing content in a larger work prepared by defendant does not satisfy this burden, even where defendant was paid for preparing the larger work. <u>See</u>, <u>e.g.</u>, <u>Mager v. Brand New School</u>, 2004 WL 2413978, *4 (S.D.N.Y. Oct. 28, 2004). Because Plaintiffs have offered no plausible nexus between law firm revenue and the narrow allegation of "internal copying" they should not be permitted to conduct discovery into law firm revenue.

Plaintiffs' motion to compel further responses should be denied.

## **CONCLUSION**

For the reasons stated above, Plaintiffs' motion to compel should be denied.

Respectfully Submitted,

Dated:  November 2, 2012	WINTHROP & WEINSTINE, P.A.

s/Devan V. Padmanabhan
Devan V. Padmanabhan (No. 240126)
Sri K. Sankaran (No. 204304)
225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400

Robert Clarida (pro hac vice)
Reitler Kailas & Rosenblatt LLC
885 Third Avenue, 20th Floor
New York, NY 10022

Attorneys for Defendants
Schwegman Lundberg & Woessner,
P.A. and John Does Nos. 1-10

7358327v3