## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

AMERICAN INSTITUTE OF
PHYSICS, WILEY PERIODICALS,
INC., AND JOHN WILEY & SONS,
INC.,

No.:  12-CV-528 (RHK-JJK)

Plaintiffs,

vs.

SCHWEGMAN LUNDBERG &
WOESSNER, P.A. AND JOHN DOE
NOS. 1-10,

**DEFENDANT'S MEMORANDUM OF
LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR
DISCOVERY RELIEF**

Defendants,

and

THE UNITED STATES PATENT AND
TRADEMARK OFFICE,

Intervening
Defendant.

_____

At the outset of this case, the parties and the Court set up an aggressive schedule:

discovery to close on December 1, 2012, initial expert reports due on December 15, 2012,

and rebuttal reports due on January 15, 2013.  Such schedules only work effectively,

however, when the parties promptly comply with their discovery obligations.  The

Plaintiffs surely recognized this fact when they assured the Court on November 9, 2012,

that "we think we can substantially complete this very, very close to the December 1st

deadline … in terms of fact discovery."  Tr. of Hearing, Nov. 9, 2012, at 5, attached as

Exhibit 1 to the April 22, 2013, Declaration of Paul J. Robbennolt (hereinafter, "Ex. ___").

As the Court now knows, the Plaintiffs' assurances were grossly inaccurate.  The Plaintiffs ultimately produced 4738 pages in this litigation.  Less than one-third—1576 pages—were produced **before December 15,** the deadline for initial expert reports.  In fact, nearly a third—1573 pages—were actually produced **after January 15**, the deadline for rebuttal reports.  This late production includes some of the key documents that support Defendant Schwegman Lundberg & Woessner, P.A.'s ("Schwegman") license and fair use defenses, including licenses entered into between the Plaintiffs and the United States Patent and Trademark Office ("USPTO") that Schwegman contends cover much of the activity at issue.  Plaintiffs only produced those key documents between January 29 and March 13.  Plaintiffs also delayed disclosing to Schwegman their infringement contentions setting forth in detail the specific acts by Schwegman that they allege infringe their copyrights.  They only produced the infringement contentions on March 7, after Schwegman successfully moved for an order compelling them to do so.

After Schwegman learned of the existence of the USPTO licenses, it notified the Court and Plaintiffs that it would need further discovery and expert analysis to address both the licenses and the Plaintiffs' infringement contentions.  Ultimately, on March 22, Schwegman produced the expert report of Douglas Lichtman (the "Lichtman Report") addressing the USPTO licenses and other documents and information that the Plaintiffs had produced at the end (or after the close) of discovery.

Plaintiffs now seek to compound the prejudice to Schwegman caused by their dilatory tactics. Plaintiffs seek to exclude the Lichtman Report, which was only produced after the expert report deadlines because of the Plaintiffs' delayed document production and disclosure of their infringement contentions. The Court should reject the Plaintiffs' gamesmanship and deny their motion in its entirety.

## I.  THE COURT SHOULD NOT STRIKE THE LICHTMAN REPORT

### A.  The Lichtman Report Addresses Evidence and Information that Plaintiffs Produced Long After the Expert Report Deadlines

#### 1.  The Plaintiffs' Dilatory Discovery Tactics

As originally adopted, the schedule in this matter contemplated that expert reports would be produced after the close of discovery. Pretrial Scheduling Order, July 13, 2012 (Dkt. No. 30). Discovery was set to close on December 1, with initial expert reports due on December 15 and rebuttal reports due on January 15. *Id.* at 1-2. At a hearing on November 9, Plaintiffs assured the Court that fact discovery would be "substantially complete" by December 1. Ex. 1 at 5. Nevertheless, the Court extended discovery to February 15, 2012, to permit the parties to complete the tasks remaining; it did not move the expert report deadlines. *Id.* at 45.

Plaintiffs promptly took advantage of the Court's order. Despite their assurances to the Court, the Plaintiffs produced the vast bulk of their documents at the end of discovery. Of 4738 pages Plaintiffs produced, only 1576 pages were produced before December 15, the initial expert report deadline. Robbennolt Dec. at ¶ 2. In fact, 1573 pages were produced after January 15, the deadline for rebuttal reports. *Id.* Even this

does not present a full picture of the Plaintiffs' dilatory tactics.  Schwegman was forced

to file **four separate motions to compel** Plaintiffs to comply with their discovery

obligations.  *See* Dkt. Nos. 48, 81, 105, and 137.  Schwegman ultimately had to convene

the Rule 30(b)(6) deposition of Plaintiff American Institute of Physics **four times** (with

help from two Court orders compelling further testimony) before its witnesses fully

complied with their obligations.

2.    <u>The Plaintiffs' Late Production of the USPTO Licenses and Their<br>Infringement Contentions</u>

Included in the Plaintiffs' late production were several documents that are central

to Schwegman's defense in this case.  Foremost among these are a series of license

agreements and related documents between the Plaintiffs and the USPTO.  Plaintiffs

produced the first of these documents on January 29, and continued their production

through March 13.  Robbennolt Dec. at ¶ 3.  Twice, Schwegman was forced to move to

compel Plaintiffs to produce a witness to testify knowledgeably about these licenses.  *See*

Dkt. Nos. 105 and 137.  Before the Plaintiffs produced these documents, Schwegman was

unaware of their existence.

The USPTO licenses are critical in this case.  Schwegman alleges that they

directly cover a substantial portion of the activity that Plaintiffs allege infringe their

copyrights:  11 of the 18 articles at issue were downloaded by Schwegman from the

USPTO's Private PAIR website.  Robbennolt Dec. at ¶ 4.  Furthermore, Schwegman

contends that the USPTO licenses support its fair use defense.  *Id.*

There is no excuse for the Plaintiffs' late production of the USPTO licenses. Schwegman sought relevant license agreements from the very beginning.  In its first set of documents requests, on July 27, 2012, Schwegman asked for documents sufficient to show the types of "licenses available with respect to the works allegedly infringed," as well as documents relating to "providing copyrighted works to … the Patent Office," both of which would cover the USPTO licenses.  Ex. 2 at Request Nos. 12, 15.  On October 30, Schwegman served an interrogatory seeking the identity of "each license that was available to Defendants … that would allow Defendants to lawfully undertake the conduct alleged to be infringement …."  Ex. 3 at Interrogatory No. 14.  Nor can Plaintiffs claim that they were unaware that Schwegman downloaded articles from the USPTO website.  On September 14, in its response to the Plaintiffs' first set of interrogatories, Schwegman told Plaintiffs that they had downloaded the articles identified in the initial Complaint from the USPTO's Private PAIR website.  Ex. 4 at 3.[1]  Plaintiffs should have produced the USPTO licenses long before the original December 1 discovery deadline.

Despite Schwegman's early discovery directed to relevant licenses, the USPTO licenses are not the only licenses that the Plaintiffs withheld until the close of discovery. On January 28, the Plaintiffs identified on a spreadsheet the license agreements with terms that governed the initial downloads of several of the articles.  Robbennolt Dec. at ¶ 5.  They identified 12 documents that include applicable license terms.  *Id.*  The Plaintiffs produced those documents between January 23 and January 25.  *Id.*

---

[1] Plaintiffs' counsel acknowledge this during the November 9 hearing.  Ex. 1 at 18, 37 ("they give us a very limited number of instances where they downloaded something from PAIR").

The Plaintiffs also delayed providing Schwegman with their infringement contentions.  Unsurprisingly, Schwegman's very first interrogatory, served on July 27, 2012, asked Plaintiffs to "[s]tate in detail … the factual basis for the claim of infringement, including the nature of the infringement, the manner in which it was accomplished, by what person(s), and when."  Ex. 5 at Int. No. 1.  When Plaintiffs refused to provide a detailed response, Schwegman was forced to move to compel them to do so.  *See* Dkt. No. 105.  Only after the Court granted that motion did Plaintiffs finally set forth a detailed list of the alleged infringing acts:  **on March 7, 2013.**  *See* Plaintiffs' Further Supp. Int. Resp. (Robbennolt Dec. Ex. 6).

### 3.   Schwegman Produced the Lichtman Report Promptly After Plaintiffs Produced the USPTO Licenses and Their Infringement Contentions

When Schwegman finally learned of the existence of the USPTO licenses, it moved to compel further discovery relating to them on February 6, 2013.  Dkt. No. 81.  At the same time, Schwegman asked for an extension of the expert report deadlines so its experts could address the newly-produced evidence, including the USPTO licenses.

During the February 20 hearing, Schwegman clearly explained the steps it would have to take.  It noted that the Plaintiffs had produced critical documents during the last two weeks of discovery, including on the very last day of discovery.  Tr. of Hearing, Feb. 20, 2013, at 3-6 (Ex. 7).  Schwegman explained that these documents—which at that point had all financial information redacted—directly impacted factor four of the fair use analysis.  *Id.* at 7-10.  Accordingly, Schwegman clearly indicated that it needed another

expert report to address this critical, new evidence.  *Id.* at 7-10, 13-15, 31-32.  The Court

deferred Schwegman's request until after it produced additional expert reports:

> [a] party can always supplement expert reports or expert opinions when it
> comes into possession of new information that would affect an expert's
> opinion.  And when that's done, that may or may not be the subject of
> objection by the other party.  As it stands right now, we don't have any
> attempt by the Defendant to supplement or add any expert opinion that has
> to do with this license with the USPTO.  If that occurs, then we will
> confront the issue of whether or not any such supplement or additional
> expert report would be allowed in the case, given all of the standards that
> we would apply with respect to a notice of expert opinions being provided
> in a timely fashion.

*Id.* at 35-36.  That issue is now ripe for decision.

After Plaintiffs finally produced the USPTO licenses, the additional applicable

licenses, and their infringement contentions, Schwegman's expert, Douglas Lichtman,

reviewed the documents and information, conducted his analysis, and prepared his report,

which Schwegman produced on March 22.  *See* Expert Report of Douglas Lichtman,

attached as Exhibit C to the April 9, 2012, Declaration of William Dunnegan (Dkt. No.

152) ("Dunnegan Dec.").  Professor Lichtman had not previously submitted an expert

report in this matter because Schwegman was unaware of the existence of the documents

and issues that he ultimately addressed, primarily the USPTO licenses.  None of the

experts who submitted initial or rebuttal reports on Schwegman's behalf have the

expertise to conduct the analysis or address the issues set forth in Professor Lichtman's

report.  Schwegman has a second expert, Jean-Pierre Dube, who addresses certain aspects

of the fair use analysis.  Dr. Dube, who has a Ph.D. in Economics, addresses the financial

aspects of the fair use analysis.  Professor Lichtman addresses the public policy issues raised by the fair use defense.  Lichtman Report at 1 (Dunnegan Dec. Ex. C).

As Schwegman had previously informed the Plaintiffs and the Court, the Lichtman Report was necessitated by, and focused on, the late-produced USPTO licenses and Plaintiffs' infringement contentions.  Professor Lichtman characterized this evidence as having "pervasive implications" for the fair use analysis.  Lichtman Report at ¶ 17 (Dunnegan Dec. Ex. C).  Addressing the USPTO licenses, Professor Lichtman described them as "arguably **the most important documents** I have read in preparing this Report." *Id.* at ¶ 21 (emphasis added).  He explained in greater detail the importance of the USPTO licenses to his analysis.  *Id.* at ¶¶ 22-23.  With respect to the Plaintiffs' infringement contentions, Professor Lichtman indicated that they were "of great importance."  *Id.* at ¶ 18.  He explained that importance in detail.  *Id.* at ¶¶ 19-20. Professor Lichtman also addressed the other licenses that Plaintiffs had identified as applicable to the article downloads.  Lichtman Report at, *e.g.*, ¶ 28 (Dunnegan Dec. Ex. C).

### B.    The Court Should Not Strike the Lichtman Report Because the Timing of its Production Was Harmless and Substantially Justified

Rule 37(c)(1) governs the late production of expert reports.  Fed. R. Civ. P. 37(c)(1); *see also C.H. Robinson Co. v. Zurich Amer. Life Ins. Co.*, 2004 WL 1765320 at *2 (D. Minn. Aug. 5, 2004).  Under the rule, the Court may exclude any late-produced report "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P.

37(c)(1).  *See also American Med. Systs., Inc. v. Laser Peripherals, LLC*, 712 F.Supp.2d 885, 894 (D. Minn. 2010); *C.H. Robinson*, 2004 WL 1765320 at *2.

Eighth Circuit case law sets forth four factors that the Court should consider when determining whether the late production of an expert report is harmless or substantially justified:

> When fashioning a remedy for untimely disclosure, a court should consider the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony.

*American Med.*, 712 F.Supp.2d at 894, *citing Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).  *See also Mathers v. Northshore Mining Co.*, 217 F.R.D. 474, 482 (D. Minn. 2003); *C.H. Robinson*, 2004 WL 1765320 at *2.  Each of these factors weighs strongly against excluding the Lichtman Report.

        1.       <u>Schwegman's Late Production of the Lichtman Report Was Substantially Justified</u>

Schwegman's failure to produce the Lichtman Report until March 22 is eminently reasonable.  The report was necessitated by, and focuses on, the USPTO licenses and Plaintiffs' infringement contentions.  Plaintiffs did not complete production of those items until, respectively, March 13 and March 7.  Schwegman simply **could not have produced the Lichtman Report until Plaintiffs produced that evidence**, and promptly produced the Lichtman Report thereafter.[2]  Under those circumstances, the timing of the

---

[2] As noted above, Schwegman necessarily submitted a report from a new expert, Professor Lichtman, because none of its existing experts could address the policy implications of the USPTO licenses on the fair use defense.  Schwegman could not have

production of the report is more than reasonable.  *See*, *e.g.*, *Mathers*, 217 F.R.D. at 482-83 (holding late production of expert report reasonable in part because opposing party "delayed in disclosing its data").

Furthermore, promptly upon learning of the **existence of** the USPTO licenses, Schwegman informed the Plaintiffs and the Court that it intended to complete discovery on those documents and then incorporate them into an additional expert report.  Memo., Feb. 6, 2012 (Dkt.No. 84); Ex. 7 at 7-10, 13-15, 30-32.  That fact supports a finding that the timing of the production was reasonable.  *See Mathers*, 217 F.R.D. at 483 (noting that defendant "was on notice that supplementation would occur").

> 2.   Plaintiffs Are Not Surprised or Prejudiced by Schwegman's Production of the Lichtman Report

As noted, Plaintiffs could not be surprised by Schwegman's production of the Lichtman Report on March 22.  Not only was the report precipitated by the Plaintiffs' own late production of the USPTO licenses and their infringement contentions, but Schwegman also alerted the Plaintiffs to the fact that they would produce an additional expert report shortly after the Plaintiffs' production.

In any event, it is axiomatic that prejudice to the opposing party can be cured through a deposition of the expert.  *See*, *e.g.*, *Allen v. Dairy Farmers of Amer., Inc.*, 2013 WL 211303 at *4 (D. Vt. Jan. 18, 2013), *citing RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2002 WL 31780188 at *4 (S.D. N.Y. Dec. 11, 2002) ("any prejudice is easily cured by allowing plaintiff to depose [expert] if [it] so desire[s]"); *Virgin Enters, Ltd. V. Am.*

---

anticipated the need for Professor Lichtman's report because it was unaware of even the existence of the USPTO licenses until Plaintiffs began to produce them on January 29.

*Longevity*, 2001 WL 34314729 at *2 (S.D. N.Y. Mar. 1, 2001) ("any prejudice will be

remedied by the deposition of [the expert]"); *Lab Grafters, Inc. v. Flow Safe, Inc.*, 2007

WL 7034303 at *7 (E.D. N.Y. Oct. 26, 2007) ("[c]ourts to address this issue have stated

that any prejudice to the opposing party can be alleviated by allowing them to depose the

expert prior to trial").  Schwegman has offered to make Professor Lichtman available for

deposition, an offer that the Plaintiffs refused.  Ex. 8.[3]  Schwegman remains willing to

schedule such a deposition at the parties' mutual convenience.  Robbennolt Dec. at ¶ 6.

### 3.    Schwegman's Production of the Lichtman Report Will Not Disrupt the Order and Efficiency of the Trial

Schwegman's production of the Lichtman Report does not disrupt in any way the

order and efficiency of the trial in this matter.  This case is to be ready for trial on

September 1, 2013.  Pretrial Scheduling Order, July 12, 2012 (Dkt. No. 30).  Plaintiffs

can depose Professor Lichtman and proceed to prepare their case without any need for a

continuance.

### 4.    Professor Lichtman's Report is Very Important

Finally, it is indisputable that Professor Lichtman's report is very important in this

matter.  Professor Lichtman himself described the late-produced evidence that he

addresses as having "pervasive implications" for the fair use analysis in this case.

Lichtman Report at ¶ 17 (Dunnegan Dec. Ex. C).  He describes the USPTO licenses as

"arguably the most important documents" for the fair use analysis, and the Plaintiffs'

---

[3] This alone argues against excluding the Lichtman Report.  *See Berroyer v. Hertz*, 672 F.2d 334, 338-39 (3d Cir. 1982) (denying motion to exclude report where party "made no attempt to cure the alleged surprise or prejudice … by requesting to depose the witness … or by seeking a continuance").

infringement contentions as "of great importance" to the analysis.  If the Court does not allow Professor Lichtman to address this evidence, **no expert will be able to address the policy implications of the documents**, because the Plaintiffs did not even produce the evidence until long after the expert report deadlines.

Further, as the Court has recognized through its description of this case as a "bellwether," Ex. 1 at 30-31, this case is a test case of sorts for Plaintiffs' efforts to force patent prosecution firms to pay royalties for actions taken in connection with the prosecution of patents before the USPTO.  Schwegman's fair use defense is central to this case; in fact, the USPTO intervened solely to argue in favor of a finding of fair use by Schwegman.  Professor Lichtman's report on fair use is key analysis that Schwegman intends to rely upon at trial in support of its fair use defense.  The public interest in the integrity and efficiency of  the patent system weighs strongly against excluding the Lichtman Report.  *See Hysitron Inc. v. MTS Systems Corp.*, 2010 WL 55987 at *10 (D. Minn. Jan. 4, 2010) (permitting expert report on patent invalidity in part because of "public interest in invalidating patents that are anticipated or obvious"); *Castle Rock Ent't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 146 (2d Cir. 1998) ("[t]he public interest is also a factor that continually informs the fair use analysis").  Thus, this Court should not exclude Professor Lichtman's expert report.

## II.  THE COURT SHOULD NOT PRECLUDE SCHWEGMAN FROM OFFERING EVIDENCE AT TRIAL CONCERNING TOPICS ADDRESSED TO NON-PARTY INVISAGE

Plaintiffs also seek on order precluding Schwegman from offering certain evidence at trial on the grounds that Invisage Inc. and its representative—non-parties to

this lawsuit that are not under Defendant Schwegman's direction or control—did not comply with a subpoena for a Rule 30(b)(6) deposition.

There is no basis for Plaintiffs' motion, a fact that is at least implicitly recognized by Plaintiffs through their failure to cite any rule or case law in their memorandum. Neither Invisage nor its representative, Ted Sargent, are parties to this action or within the control of Defendant Schwegman. Thus, Rule 37, which provides sanctions for **a party's** failure to comply with its discovery obligations, is not applicable. Fed. R. Civ. P. 37(c) and (d). Instead, the rule that governs Invisage's compliance with its obligations is Rule 45, which addresses subpoenas to non-parties. Fed. R. Civ. P. 45. Under Rule 45, the proper sanction for a witness's failure to comply with his or her obligations is a finding of contempt. Fed. R. Civ. P. 45(d). Nothing in the rules contemplates sanctioning **a party** for **a non-party's alleged failure to comply with its discovery obligations**, nor would such a penalty be appropriate.

Nor do the facts and circumstances justify precluding Schwegman from offering evidence covered by the subpoena—essentially, evidence that ten of the articles at issue were originally downloaded through the University of Toronto pursuant to a license between the Plaintiffs and the University of Toronto. *See* Plaintiffs' Memo. at 5.

First, the facts at issue simply are not in dispute or controversial. The Plaintiffs themselves identified the relevant articles as having been downloaded by the University of Toronto, and identified to Schwegman the licenses that were applicable to those initial downloads. Robbennolt Dec. at ¶ 5. For that reason, Schwegman has no intention of calling Dr. Sargent, or any representative of Invisage, at trial, and has so informed

Plaintiffs.  Robbennolt Dec. at ¶ 7.  To preclude Schwegman from offering evidence of facts that the Plaintiffs do not dispute, and to which the Plaintiffs presumably would stipulate, makes little sense.

Second, neither Invisage nor its counsel[4] failed to comply with their obligations. After this Court's order that Dr. Sargent must appear for deposition, Plaintiffs served a Rule 30(b)(1) deposition notice of Dr. Sargent individually.  Robbennolt Dec. Ex. 9.  Dr. Sargent's counsel believed that the individual deposition notice was intended to replace the subpoena for the Rule 30(b)(6) deposition, and therefore did not further prepare Dr. Sargent to testify on the Rule 30(b)(6) topics.  *See* Deposition of E. Sargent, March 19, 2013, at 39-40 ("Sargent Dep.") (Dunnegan Dec. Ex. G).  In any event, it is undisputed that no one at Invisage would have any more information on the Rule 30(b)(6) topics than Dr. Sargent.  *See* February 8, 2013, E-mail from S. Sankaran to Plaintiffs' counsel (Robbennolt Dec. Ex. 10); Sargent Dep. at 40 (Dunnegan Dec. Ex. G).  Dr. Sargent's counsel even offered to continue the deposition, Dunnegan Dec. Ex. G at 42, until it became clear that Schwegman would not call Dr. Sargent or any Invisage witness at trial. Dunnegan Dec. Ex. H.

Under the circumstances, there is no basis to preclude Schwegman from offering evidence at trial.

---

[4] Although Winthrop & Weinstine initially represented Invisage and Dr. Sargent for purposes of the subpoena, after Plaintiffs tried to force the deposition to be scheduled during the week that Dr. Sargent's father was placed in hospice, Dr. Sargent retained separate counsel, a fact of which Plaintiffs were informed.  Dunnegan Dec. Ex. F.

## CONCLUSION

For the above-stated reasons, Schwegman respectfully requests that the Court deny Plaintiffs' motion for discovery relief in its entirety.

Respectfully submitted,

Dated:  April 22, 2013                          WINTHROP & WEINSTINE, P.A.

                                                s/Paul J. Robbennolt_____
                                                Devan V. Padmanabhan (No. 240126)
                                                Sri K. Sankaran (No. 204304)
                                                Paul J. Robbennolt (No. 240497
                                                225 South Sixth Street
                                                Suite 3500
                                                Minneapolis, Minnesota 55402
                                                (612) 604-6400

                                                Robert Clarida (pro hac vice)
                                                Reitler Kailas & Rosenblatt LLC
                                                885 Third Avenue, 20th Floor
                                                New York, NY 10022

                                                Attorneys for Defendant
                                                Schwegman Lundberg & Woessner,
                                                P.A. and John Does Nos. 1-10

7852378v1